UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**ROSA ESTHER GUTIERREZ**,

    Plaintiff,

v.                                                                                                     2:23-cv-78-NPM

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

---

## ORDER

Plaintiff Rosa Esther Gutierrez seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 7),[1] Gutierrez filed an opening brief (Doc. 16), the Commissioner responded (Doc. 19), and Gutierrez replied (Doc. 20). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

**I.  Eligibility for Disability Benefits and the Administration's Decision**

    **A.  Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.  Factual and procedural history

On January 4, 2021, Gutierrez applied for disability insurance benefits and supplemental security income. (Tr. 275-92). She asserted an onset date of September 18, 2020, alleging disability due to the following: bilateral knee problems, depression, and anxiety. (Tr. 82, 93, 106). As of the alleged onset date, Gutierrez was 41 years old with a ninth-grade education. (Tr. 82, 86, 91, 93, 106, 116, 322).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

She previously worked as a housekeeper, a cashier, and a janitor. (Tr. 91, 116, 322).

On behalf of the administration, a state agency [5] reviewed and denied Gutierrez's applications initially on July 30, 2021, and upon reconsideration on February 11, 2022. (Tr. 82-105; 106-34). At Gutierrez's request, Administrative Law Judge (ALJ) Charles J. Arnold held a hearing and, on June 22, 2022, issued an unfavorable decision finding Gutierrez not disabled. (Tr. 15-30, 37-59). Gutierrez's timely request for review by the administration's Appeals Council was denied. (Tr. 1-3). Gutierrez then brought the matter to this court, and the case is ripe for judicial review.

C. The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the

process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Gutierrez had not engaged in substantial gainful activity since September 18, 2020, the alleged onset date. (Tr. 18). At step two, the ALJ characterized Gutierrez's severe impairments as: osteoarthritis of the knees, degenerative disc disease of the lumbar spine, obesity, cognitive deficits, depression, and anxiety. (Tr. 18). At step three, the ALJ determined Gutierrez did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 18).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows. The claimant is able to perform only low stress work defined as no high production demands; only simple routine repetitive tasks with simple instructions; and have only occasional interaction with others at the worksite.

(Tr. 22). Consequently, the ALJ found Gutierrez was unable to perform her past relevant work. (Tr. 28). At step five, the ALJ found Gutierrez could perform other

- 5 -

work that exists in significant numbers in the national economy. (Tr. 29-30). In support, a vocational expert testified (Tr. 51-53) that an individual of Gutierrez's age, education, work experience, and RFC can perform the following representative occupations:

- *Clerical assistant,* DOT #209.587-010, sedentary; SVP 2, with 136,000 jobs in the national economy;

- *Scanner,* DOT #219.587-018, sedentary, SVP 2, with 44,000 jobs in the national economy;

- *Folder*, DOT #685.687-014, sedentary, SVP 2, with 20,000 jobs in the economy.[6]

Thus, for purposes of the Act, the ALJ concluded Gutierrez was not disabled from September 18, 2020, the alleged onset date, through June 22, 2022, the date of the decision. (Tr. 30).

## II.   Analysis

Gutierrez's appeal presents the following issues for review:

(1)   Whether the ALJ properly found Dr. Lloyd Gladding unpersuasive; and

(2)   Whether the ALJ properly omitted from the RFC any need for a hand-held assistive device for walking.

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

### A.     Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the

agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

      **B.**    **Substantial evidence supports the ALJ's discount of Dr. Lloyd Gladding's opinion.**

In August 2020, Dr. Gladding completed two check-the-box forms: a Physical Capacity Evaluation and a Questionnaire as to Mental Residual Functional Capacity. (Tr. 416-21). In the Physical Capacity Evaluation, Dr. Gladding marked that Gutierrez could not stand/walk in an eight-hour workday; she can sit for an hour at a time; she can sit for four hours throughout the day; she can lift 11-20 pounds; she can occasionally lift; she can use her hands for repetitive grasping, pushing/pulling, and fine manipulation; she cannot use her feet for repetitive movements; she can bend occasionally but never squat, crawl, or climb; and she can reach above shoulder level. (Tr. 416-17).

As for the mental RFC questionnaire, Dr. Gladding found that Gutierrez generally had "extreme" mental limitations despite noting largely "mild" and "moderate" limitations in a variety of functions, except one "marked" limitation in ability to perform at production levels expected by most employers.[7] And he

---

[7] Contrary to the applicable regulatory regime, "Extreme" is defined in the questionnaire as "unable to function in this area over 50% of the work day or work week." "Marked" is the same but with a range from 26% to 50% of the workday or workweek; "Moderate" is 11% to 25%; "Mild" is less than 10%; and "None" equates to no limitation. (Tr. 753). When assessing the functional impacts of mental-health impairments, ALJs rate any limitations using the same five-point scale: (1) none; (2) mild; (3) moderate; (4) marked; or (5) extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). But the regulations ascribe entirely different meanings to

checked "yes" that Gutierrez's condition is likely to deteriorate if placed under the stress of a job. (Tr. 418-21). The ALJ found Dr. Gladding's opinions unpersuasive. Gutierrez argues the ALJ's persuasiveness analysis was incomplete.

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. §§ 404.1520c, 416.920c. No longer is an ALJ to afford deferential weight to the opinions of any particular source, such as a treating physician. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources"

---

these terms. An "extreme" limitation in a particular domain means the claimant cannot function in that area independently, appropriately, effectively, and on a sustained basis. "Mild" connotes a slight limitation, "marked" suggests a serious one, and "moderate" indicates something less than serious but more than slight. 20 C.F.R. Pt. 404, Subpt. P, App.1, Pt. A, 12.00, F.2.

are consistent with the medical opinion presented. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Thus, persuasiveness, rather than weight, is the object at hand when assessing a medical opinion. 20 C.F.R. §§ 404.1520c, 404.1527(c), 416.920c, 416.927(c).

    As for the physical-capacity evaluation, the ALJ explained:

> The evidence of record, including findings on imaging, physical examinations, treatment notes, and the claimant's treatment history, which includes repeat bilateral knee injections, but no cervical or lumbar injections, does not support lifting/carry up to 20 pounds; no ability to walk; and only sitting for up to four hours in an eight hour workday. The claimant is not as limited as previously assessed.

(Tr. 28). And for the mental limitations, the ALJ reasoned:

> This opinion is not fully persuasive. Findings on mental status examinations and psychiatric screenings, as well as the claimant's treatment history, are persuasive in showing that claimant she [*sic*] is able to perform low stress work defined as no high production demands; simple routine repetitive tasks with simple instructions; and have only occasional interaction with others at the worksite.

(Tr. 28). Gutierrez takes issue with the ALJ's persuasiveness evaluation, contending that it never addressed the "supportability" factor when assessing these opinions, and that its rationale for the "consistency" factor is conclusory.

    But the ALJ sufficiently addressed the lack of supportability for Dr. Gladding's mental limitations. He noted that Dr. Gladding found Gutierrez generally had "extreme" mental limitations despite identifying almost exclusively mild to moderate limitations in the specific areas of mental functioning. In other

- 10 -

words, Dr. Gladding's finding of extreme mental limitations was unsupported—if not contradicted—by the rest of his opinion. And Gutierrez concedes the ALJ's failure to expressly use the word "supportability" in his analysis is harmless. *See Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.").

The ALJ had even more to say about the lack of consistency. He explained that Dr. Gladding's findings were inconsistent with other mental status examinations, psychiatric screenings, and Gutierrez's treatment history. Gutierrez argues the ALJ's reasoning was conclusory, and the conclusory nature of the ALJ's analysis cannot be cured by discussion elsewhere in the opinion. But she is mistaken. An ALJ's opinion is not required to take any specific form. Indeed, it matters not whether the ALJ names particular items in the record while evaluating a medical opinion so long as they are discussed elsewhere in the decision. *See Hutson v. Comm'r, Soc. Sec. Admin.*, No. 6:21-cv-01495-SGC, 2023 WL 2634037, *5 (N.D. Ala. Mar. 24, 2023) (rejecting claimant's argument that the ALJ failed to adequately address the supportability and consistency factors of a medical source because the ALJ discussed them "in a general way elsewhere in her opinion"); *Roussin v. Comm'r of Soc. Sec.*, No. 2:20-cv-905-SPC-MRM, 2021 WL 6205948, *8 (M.D.

Fla. Dec. 16, 2021), *report and recommendation adopted*, 2022 WL 19698 (Jan. 3, 2022) ("While the ALJ did not explicitly state the findings on which he relied, the findings are evident considering the ALJ's decision as a whole[.]" (cleaned up)). On that score, the ALJ's consistency analysis is supported elsewhere in his opinion. He explained that evaluations showed Gutierrez as alert, oriented, and with an appropriate or euthymic mood and affect or otherwise revealed normal mental findings. (Tr. 25-26, 440, 445, 460, 479-80, 485, 493, 496, 522, 558). And he observed Gutierrez has no history of inpatient-mental-health treatment or intensive-outpatient therapy but, rather, has only received routine and conservative treatment. (Tr. 26). Thus, "[w]hile the ALJ's discussion of Dr. [Gladding's] opinions is brief, [his] earlier discussion of the medical evidence provides additional support." *Gibbs v. Comm'r of Soc. Sec.*, No. 6:22-cv-719-MAP, 2023 WL 4117996, *5 (M.D. Fla. June 22, 2023).

Turning next to the ALJ's analysis of Dr. Gladding's opinion about Gutierrez's physical limitations, the ALJ ultimately found the opinion "not persuasive." (Tr. 28). It appears the ALJ combined his supportability and consistency analysis together, which is not improper. *C.f. Alvarez v. Comm'r of Soc. Sec.*, No. 20-cv-24711, 2022 WL 2092886, *2 (S.D. Fla. June 10, 2022) ("The Court is unaware of, and Plaintiff fails to cite, any legal authority indicating that the ALJ cannot address the supportability and consistency of the evidence simultaneously.").

As he explained: "The evidence of record, including findings on imaging, physical examinations, treatment notes, and the claimant's treatment history" do not support Dr. Gladding's findings. (Tr. 28).

Emphasizing Gutierrez's limited and conservative treatment, the ALJ found Dr. Gladding's limitations too extreme. He noted the evidence of record reflects Gutierrez largely received treatment for her knees, not her back. And although she was recommended for knee surgery in 2019, no such recommendation has been made recently. Instead, her knee treatment has been conservative, consisting of bilateral knee injections. (Tr. 25, 444, 447, 461). And the ALJ emphasized that Gutierrez's conservative knee treatment did not support a disability finding. (Tr. 25). Additionally, the ALJ noted that a 2019 MRI of the lumbar spine revealed mostly degenerative changes and no acute osseous abnormality.[8] (Tr. 23, 28, 429-33). Plus, elsewhere in the opinion, the ALJ explained physical examinations showed normal gait, stance, neurological function, knee stability, and motor activity, and that Gutierrez routinely received conservative medical treatment. (Tr. 23, 25, 27-28, 429-30, 440-41, 479, 493).

In sum, the ALJ found the unremarkable imaging in Dr. Gladding's medical records did not support such extreme limitations as never walking and only sitting

---

[8] Gutierrez argues the 2019 MRI was not conducted by Dr. Gladding, so it is irrelevant to a supportability analysis. The court disagrees. The imaging was nonetheless in Dr. Gladding's medical records. So it seems appropriate to consider it in conjunction with his own opinions.

for up to four hours in an eight-hour workday. And such extreme limitations were inconsistent with Gutierrez's conservative knee treatment, lack of back treatment, and normal findings on physical examination. This sufficiently addressed both the supportability and consistency factors and is supported by substantial evidence.

Even if the ALJ's supportability analysis was somehow insufficient, any such error would be harmless. At bottom, the consistency analysis is well established and supported by substantial evidence, as discussed above. So even assuming Dr. Gladding's opinions were consistent with his file, it would not have affected the ALJ's ultimate decision because Dr. Gladding's extreme limitations were still inconsistent with the overall record.[9] *See C.B. v. Comm'r of Soc. Sec.*, No. 7:21-cv-147 (TQL), 2023 WL 167090, *5 (M.D. Ga. Jan. 12, 2023) (citing *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 559 (11th Cir. 2015) ("To the extent that it was error for the ALJ to fail to explicitly articulate his consideration of the "supportability" of [the doctor's] opinion, the Court finds that it is harmless error because the ALJ considered [the doctor's] opinion and the underlying evidence in the record, so that

---

[9] It is worth observing that Dr. Gladding's opinions derive from a check-the-box form that provides no analysis or reference to specific treatment notes. In other words, there is no explanation for how Dr. Gladding arrived at the opined limitations. And consistent with the regulations, ALJs may properly find conclusory forms unpersuasive. *See, e.g.*, *Kerr v. Comm'r of Soc. Sec.*, No. 2:22-cv-148-SPC-NPM, 2023 WL 2919837, at *7 (M.D. Fla. Jan. 17, 2023), *report and recommendation adopted*, 2023 WL 2446373 (Mar. 10, 2023) (collecting cases); *Roussin*, 2021 WL 6205948, at *8. When an ALJ considers the supportability of a medical opinion, the more supporting explanations provided, the more persuasive the opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)).

any failure to articulate whether the opinion was "supported" would not have affected the ALJ's ultimate decision."). And courts should decline "to remand for express findings when doing so would be a wasteful corrective exercise in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision[.]" *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (internal quotation marks omitted).

Gutierrez otherwise cites evidence in the record that may corroborate Dr. Gladding's opinions. But under a substantial evidence standard, this will not do. A claimant "must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017). Put simply, the court may not entertain this invitation to reweigh the evidence.

### C.  The ALJ properly omitted from the RFC any need for a hand-held device for walking.

The record includes a state-agency form in which Gutierrez's orthopedic surgeon, Dr. Guzman, checked "yes" that a hand-held assistive device is medically necessary for Gutierrez to ambulate independently. And Dr. Guzman specified on the form that Gutierrez should use the device "to maintain balance *as needed* to prevent fall." (Tr. 505 (emphasis added)). The ALJ's RFC does not incorporate the use of an assistive device. And Gutierrez assigns error to this omission.

In particular, Gutierrez points to an administrative policy interpretation about

incorporating additional limits when an RFC—such as the one here—is already limited to sedentary work (SSR 96-9p), and she contends that the ALJ failed to follow it. But, in pertinent part, SSR 96-9p states:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

1996 WL 374185, *7 (July 2, 1996). Thus, the SSR requires the satisfaction of a two-pronged test before an assistive device for walking or standing should be included in a sedentary RFC: a medically documented need for it, and a medically documented description of the circumstances when it is needed. Gutierrez failed to satisfy the second prong.

There is no medical documentation in the record describing the circumstances for which Gutierrez would need an assistive device. Instead, all we have is Dr. Guzman noting a device should be used "as needed" to prevent a fall. But simply noting that a cane should be used "as needed" does not satisfy the second prong of SSR 96-9p. *See Brown v. Saul*, No. cv 119-144, 2020 WL 5507817, *4 (S.D. Ga. Aug. 12, 2020), *report and recommendation adopted*, 2020 WL 5507532 (Sept. 11, 2020). *Cf. Castro v. Kijakazi*, No. 7:20-cv-35-D, 2021 WL 4189618, at *6-7 (E.D.N.C. Sept. 14, 2021) (concluding the doctor's notes did not meet the regulatory definition of medical opinion when the doctor only noted plaintiff suffered from

lymphedema of both lower extremities and instructed plaintiff to elevate her legs where possible, while seated or recumbent, but made no mention of whether or how this would impact or limit plaintiff's ability to work). Indeed, Dr. Guzman's instruction amounts to nothing more than stating an assistive device "is needed as needed."

Further, the ALJ observed that an assistive device was not prescribed. (Tr. 25). It is true, as Gutierrez points out, that a lack of prescription is not dispositive. However, it "is a factor than can be considered when evaluating whether a claimant has provided sufficient medical documentation to establish the need for an assistive device." *Lyons v. Kijakazi*, No. 22-60539-CIV, 2023 WL 8261261, *5 (S.D. Fla. Feb. 28, 2023). Regardless, Gutierrez failed to make the minimum showing needed to establish the medical necessity of a cane or walker. Thus, the ALJ followed SSR 96-9p and did not commit reversible error. *See Charity v. Comm'r of Soc. Sec.*, No. 6:19-cv-1075-ORL-EJK, 2020 WL 5797623, *3 (M.D. Fla. Sept. 29, 2020) ("Without such a showing, an administrative law judge would not be required to include the use of an assistive device in the RFC or the hypothetical to the vocational expert.").[10]

---

[10] In her reply brief, Gutierrez suggests for the first time that the ALJ should have re-contacted Dr. Guzman for supplemental information regarding the circumstances in which Gutierrez requires an assistive device. And by neglecting to do so, the ALJ failed to comply with his duty to develop the record. (Doc. 20 at 3-4). But the scheduling order explains that "Plaintiff may not use a reply brief to introduce . . . a previously undeveloped contention or raise another question for resolution." (Doc. 13 at 4); *see also Distrib. Res. Mgmt., Inc. v. Peacock*, No. 2:12-cv-00188-SLB, 2012 WL

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 26, 2024.

_____
NICHOLAS P. MIZELL
United States Magistrate Judge

---

2930787, *2 (N.D. Ala. July 13, 2012) ("[A]s the Eleventh Circuit repeatedly has admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court." (cleaned up)).